| | |
|---|---|
| BRUCE K. SIDDLE and SANDRA K. SIDDLE, Individually, and as Trustees of the BRUCE K. SIDDLE and SANDRA K.SIDDLE TRUSTS, dated July 16, 2003, and PPCT MANAGEMENT SYSTEMS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CONNECTGOV, INC.; DC INVESTMENT PARTNERS, LLC; FOUR CORNERS CAPITAL, LLC of the state of Tennessee; GULLETT SANFORD ROBINSON AND MARTIN, PLLC; LATIMORE BLACK MORGAN & CAIN, P.C.; LYNVIEW CAPITAL; LYNVIEW PARTNERS, LLC; PHAROS CAPITAL PARTNERS, L.P.; PHAROS HOMELAND; PHAROS HOMELAND FINANCIAL; PHAROS HOMELAND FINANCIAL, LLC; PHAROS HOMELAND, LLC; MICHAEL W. DEVLIN; JACK H. DALTON; JOSEPH F. JOHNSON, JR.; STEVEN W. LOGAN; SATELLITE TRACKING OF PEOPLE, LLC. (STOP) of the state of Tennessee; SATELLITE TRACKING OF PEOPLE, LLC. (STOP) of the state of Delaware; and, SMARTDM HOLDING, INC. <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No.  09-cv-376-GPM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Come now Plaintiffs, by counsel, Bruce Carr and The Rex Carr Law Firm, LLC, and for their causes of action against Defendants, state:

### Introduction

1.      Plaintiffs bring this civil action to recover damages caused by Defendants' racketeering activity and illegal conspiracy directed against Plaintiffs.

2.      Pursuant to 18 U.S.C. §§ 1962(a), (b), (c), & (d) and Illinois law, Plaintiffs seek the imposition of a constructive trust with tracing, costs, attorney fees, prejudgment interest, compensatory, punitive, and treble damages in excess

Page 1 of 32

of Eighty One Million Nine Hundred Twenty Five Thousand Two Hundred Sixty Dollars ($81,925,260).

**Jurisdiction and Venue**

3.      Pursuant to 18 U.S.C. § 1964(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1337 this Court has subject matter jurisdiction over Plaintiffs' RICO claims to issue an order directing the defendants to divest themselves of any interest, direct or indirect, in their enterprises, giving due consideration for the rights of innocent persons, for the benefit of the plaintiffs.

4.      Pursuant to 18 U.S.C. § 1964(c), 28 U.S.C. § 1331, and 28 U.S.C. § 1337 this Court has subject matter jurisdiction over Plaintiffs' RICO claims to award Plaintiffs threefold the damages Plaintiffs sustained to their business or property interests, costs of the suit, and reasonable attorney fees.

5.      Pursuant to 28 U.S.C. § 1367(a), this Court has subject matter jurisdiction over Plaintiffs' related Illinois claims.

6.      Pursuant to 18 U.S.C. § 1965(a), and 28 U.S.C. §§ 1391(b)(c), this Court has personal jurisdiction over the defendants.  This District is the proper venue.

(a)     Pursuant to 735 ILCS 5/2-209, all of the defendants submitted to personal jurisdiction in the state of Illinois.

(b)     Defendants derived income from Illinois by the operation of their RICO enterprises.

(c)     Defendants purposefully caused direct harm to the Plaintiffs, citizens of Illinois, in St. Clair County, Illinois.

(d)     Defendants' unlawful conduct affected interstate commerce in Illinois.

Case 3:09-cv-01137   Document 2    Filed 05/19/09   Page 2 of 32 PageID #: 5

(e)     Defendants or their agents conducted and transacted business in Illinois.

(f)     Defendants' specific acts and omissions, described herein, caused harm to Plaintiffs in St. Clair County, Illinois, which gave rise to Plaintiffs' claims for relief in St. Clair County, Illinois.

(g)     Numerous victims, witnesses, evidence, and this litigation arose from injuries related to the specific acts or omissions, described herein, in St. Clair County, Illinois.

(h)     Pursuant to 735 ILCS 5/2-101, St. Clair County, Illinois is the proper venue for this action.  All of the defendants are nonresidents of Illinois.

7.     As used herein, "at all relevant times", refers to and includes the period from October 18, 2001, until present, as the period during which the non-party conspirators devised and the defendant conspirators joined the conspiracy to obtain Plaintiffs' business and property interests by illegal means, including the racketeering acts described herein.

8.     Plaintiffs only discovered their causes of action, as set forth herein, from May of 2008 to October 2008 and are still discovering causes of action that were fraudulently concealed from the plaintiffs by the members of the conspiracy described herein.

**Plaintiffs**

9.     Plaintiffs, BRUCE K. SIDDLE and SANDRA K. SIDDLE ("the Siddles"), are: (a) residents and citizens of the County of St. Clair and state of Illinois; (b) officers of PPCT Management Services, Inc. ("PPCT") from 1986 to present; (c) trustees of the Bruce K. Siddle and Sandra K. Siddle Trusts, dated July 16, 2003,

Page 3 of 32

("BKST" and "SKST"), Illinois Trusts; and, (d) persons who since 1986 held business, property, and honest services interests of over One Hundred Million Dollars ($100,000,000) in their positions, contracts, and ownership of: (i) PPCT Management Systems, Inc.; (ii) Homeland Security Corporation; and (iii) Homeland Training Corporation.

10.     Plaintiff, PPCT MANAGEMENT SYSTEMS CORPORATION, INC. ("PPCT"), is an Illinois Corporation incorporated in 1986 by BRUCE K. SIDDLE that is doing business in Illinois and is a citizen of Illinois.

11.     PPCT provided highly specialized security management training to government and commercial entitles in United States and throughout the world, including Illinois.  Some of PPCT's clients included the U.S. Department of Homeland Security, the U.S. State Department, and the U.S. Army's Joint Special Operations Group at Fort Bragg, North Carolina.

## Non-party Conspirators

12.     Doctor R. Crants, Jr., ("Crants, Jr.,"), and/or Doctor R. Crants, III, ("Crants, III,"), at all relevant times, were, agents, servants, and/or employees of the named defendant-enterprises, authorized to transact business, and to accept payments in the name of the defendant-enterprises.

13.     Crants, Jr., and Crants, III, unlawfully controlled Homeland Security Corporation ("HSC"), a corporation, incorporated in the state of Tennessee.

14.     George V. Crawford, III, Linda Cooper, Doctor R. Crants, Jr., and Roy W. Oaks, at all relevant times, were, professional employees and fiduciaries of HSC that owed HSC and the plaintiffs the duty of honesty, good faith, and fair dealing:

(a)     Roy W. Oaks was HSC's Certified Public Accountant.  Oaks was also a

Case 3:09-cv-01137   Document 2   Filed 05/19/09   Page 4 of 32 PageID #: 7

principal of LATIMORE BLACK MORGAN & CAIN, P.C.;

(b)    Linda Cooper was HSC's in-house Corporate Counsel.  Cooper was also one of HSC's Vice Presidents;

(c)    George V. Crawford, III, was HSC's outside Corporate Counsel. Crawford, III, was also a principal of GULLETT SANFORD ROBINSON AND MARTIN, PLLC ("GSRM");

(d)    Crants, Jr., was HSC's Chairman of the Board; and,

(e)    Crants, Jr., was also a principal of CONNECTGOV, INC., DC INVESTMENT PARTNERS, LLC, FOUR CORNERS CAPITAL, LLC, LYNVIEW CAPITAL, LYNVIEW PARTNERS, LLC, PHAROS CAPITAL PARTNERS, L.P., PHAROS HOMELAND, PHAROS HOMELAND FINANCIAL, PHAROS HOMELAND FINANCIAL, LLC, PHAROS HOMELAND, LLC, SATELLITE TRACKING OF PEOPLE, LLC., and, SMARTDM HOLDING, INC.

15.    These non-party conspirators owed HSC and the plaintiffs the duty not to enter into any opposition businesses of such a nature, or to act in such a manner, as to financially cripple or injure HSC or the plaintiffs.  Moreover, they had the duty not to wrongfully use HSC's or the plaintiffs' resources for their own enterprises, not to divert or lure away HSC or the plaintiffs' business or clients, and not to usurp HSC's or the plaintiffs' corporate opportunities.

16.    All of the defendants facilitated, aided, and abetted and agreed to further illegal schemes devised by Crants, Jr., and Crants, III, to defraud HSC and the plaintiffs of their business and property interests through the racketeering activity described herein.

Case 3:09-cv-01137   Document 2    Filed 05/19/09   Page 5 of 32 PageID #: 8

17.    All of the corporations, partnerships, and legal entities named here as "defendant-enterprises", at all relevant times, were:

(a)    Owned, managed, or controlled by, or associated with Crants, Jr., Crants, III, George V. Crawford, III, Roy, W. Oaks, MICHAEL W. DEVLIN, STEVEN W. LOGAN, and/or JOSEPH F. JOHNSON, JR.;

(b)    RICO enterprises that affected interstate commerce within the meaning of 18 U.S.C. § 1961(4) that: (i) made purchases from Illinois and/or other states;  (ii) hired workers from Illinois and/or other states; and, (iii) transmitted funds to and from Illinois and/or other states;

(c)    Persons within the meaning of 18 U.S.C. § 1962(a) that: (i) received income derived, directly or indirectly, from a pattern of racketeering activity; and, (ii) used or invested such income in their operations; and,

(d)    Principals within the meaning of 18 U.S.C. § 2.

18.    Defendant CONNECTGOV, INC., is a corporation, incorporated in the state of Tennessee.

19.    Defendant DC INVESTMENT PARTNERS, LLC, is a corporation, incorporated in the state of Tennessee in privity with DC Investment Partners Exchange Fund, L.P., DC Investment Partners Opportunity Fund, L.P., and, Entrepreneurial Ventures, Inc.

20.    Defendant FOUR CORNERS CAPITAL, LLC, is a corporation, incorporated in the state of Tennessee in privity with Four Corners Capital, LLC, of the state of Delaware, Four Corners Capital, LLC, of the state of Washington, Four Corners Capital, LLC of the state of California, Four Corners Capital LLLP, Four

Page 6 of 32

Corners Capital, LTD., Four Corners Capital Advisors, L.P., Four Corners Capital Management, LLC of the state of Delaware, Four Corners Capital Management, LLC of the state of Illinois, Four Corners Capital Partners, LLC of the state of Rhode Island, Four Corners Capital Partners, LLC of the state of Texas; and, Four Corners Capital Partners, LLC of the state of Georgia.

21.    Defendant GULLETT SANFORD ROBINSON AND MARTIN, PLLC, ("GSRM") is a partnership formed in the state of Tennessee.  GSRM assigned George Crawford, III, to handle the legal affairs of Crants, Jr., STOP, CONNECTGOV, and HSC for GSRM.

22.    Defendant LATIMORE BLACK MORGAN & CAIN, P.C., ("LBMC") is a partnership formed in the state of Tennessee.  LBMC assigned Roy W. Oaks to handle the accounting affairs of HSC for LBMC.

23.    Defendant PHAROS CAPITAL PARTNERS, L.P., is a partnership, formed in the state of Tennessee in privity with Pharos Capital Group, LLC of the state of Delaware, Pharos Capital Group, II, LLC of the state of Delaware, Pharos Capital Group, II-A, LLC, of the state of Delaware, Pharos Capital LLC of the state of Florida, Pharos Capital Management, L.L.C. of the state of Georgia, Pharos Capital, LLC, of the state of North Carolina, Pharos Capital Advisors, LLC, of the state of California, PHAROS HOMELAND of the state of Tennessee, PHAROS HOMELAND FINANCIAL of state of Tennessee, PHAROS HOMELAND FINANCIAL, LLC, of the state of Tennessee, PHAROS HOMELAND, LLC, of the state of Tennessee, LYNVIEW CAPITAL of Tennessee, and LYNVIEW PARTNERS, LLC of Tennessee, and SMARTDM HOLDING, INC of the state of Iowa.

24.    Defendant SATELLITE TRACKING OF PEOPLE, LLC. (STOP) of

Tennessee, is a corporation, incorporated in the state of Tennessee in privity with SATELLITE TRACKING OF PEOPLE, LLC. of Delaware, incorporated in the state of Delaware.

### Individual Defendants

25.     Defendant, JACK DALTON, at all relevant times, participated in the unlawful control of the affairs of CONNECTGOV, INC.

26.     JACK DALTON: (i) received income derived from CONNECTGOV, INC, and used such income in the operation of CONNECTGOV, INC; (ii) acquired or maintained an interest in and control of CONNECTGOV, INC; (iii) conducted or participated in the conduct of CONNECTGOV, INC.; and, (iv) agreed to conduct or participate in the affairs of CONNECTGOV, INC through a pattern of racketeering activity.

27.     Defendant, MICHAEL W. DEVLIN, at all relevant times, participated in the unlawful control of the affairs of FOUR CORNERS, LYNVIEW PARTNERS, LLC, LYNVIEW CAPTIAL, CONNECTGOV, INC., DC INVESTMENT, and PHAROS CAPITAL.

28.     MICHEAL W. DEVLIN: (i) received income derived from FOUR CORNERS, LYNVIEW, CONNECTGOV, INC., DC INVESTMENT, and PHAROS CAPTIAL and used such income in the operation of these enterprises; (ii) acquired or maintained an interest in and control of these enterprises; (iii) conducted or participated in the conduct of these enterprises; and, (iv) agreed to conduct or participate in the affairs of these enterprises through a pattern of racketeering activity.

29.     Defendant, JOSEPH F. JOHNSON, JR., at all relevant times, participated in the unlawful control of the affairs STOP, HSC, and CONNECTGOV, INC.

30.     JOSEPH F. JOHNSON, JR.: (i) received income derived from STOP, HSC, and CONNECTGOV, INC, and used such income in the operation of STOP, HSC, and CONNECTGOV, INC; (ii) acquired or maintained an interest in and control of STOP, HSC, and CONNECTGOV, INC; (iii) conducted or participated in the conduct of STOP, HSC, and CONNECTGOV, INC.; and, (iv) agreed to conduct or participate in the affairs of STOP, HSC, and CONNECTGOV, INC through a pattern of racketeering activity.

31.     Defendant, STEVEN W. LOGAN, at all relevant times, participated in the unlawful control of the affairs of STOP.

32.     STEVEN W. LOGAN: (i) received income derived from STOP and used such income in the operation of STOP; (ii) acquired or maintained an interest in and control in STOP; (iii) conducted or participated in the conduct of STOP; and, (iv) agreed to conduct or participate in the affairs of STOP through a pattern of racketeering activity.

## Causes of Action

### Count I: 18 U.S.C. § 1962(a) RICO

Come now Plaintiffs, Bruce K. Siddle, Sandra K. Siddle, individually, and as Trustees of The Bruce K. Siddle and Sandra K. Siddle Trusts, dated July 16, 2003, and PPCT Management Systems, Inc., and, for their first cause of action against the defendant-enterprises, CONNECTGOV, INC.; DC INVESTMENT PARTNERS, LLC; FOUR CORNERS CAPITAL, LLC of the state of Tennessee; GULLETT SANFORD ROBINSON AND MARTIN, PLLC; LATIMORE BLACK MORGAN & CAIN, P.C.; LYNVIEW CAPITAL; LYNVIEW PARTNERS, LLC; PHAROS CAPITAL PARTNERS, L.P.; PHAROS HOMELAND; PHAROS HOMELAND FINANCIAL; PHAROS HOMELAND FINANCIAL,

LLC; PHAROS HOMELAND, LLC; SATELLITE TRACKING OF PEOPLE, LLC. (STOP) of the state of Tennessee; SATELLITE TRACKING OF PEOPLE, LLC. (STOP) of the state of Delaware; and, SMARTDM HOLDING, INC. allege that these persons:

    (i)    received income derived, directly or indirectly, from a pattern of racketeering activity;

    (ii)    used or invested, directly or indirectly, parts of such income, or the proceeds from such income, in the operations of their respective enterprises as described herein; and,

    (iii)    injured the plaintiffs' business and property interests by use or investment of the racketeering income described herein.

    33.    Plaintiffs repeat and allege the allegations of paragraphs 1 through 32 of above as paragraphs 1 through 33 of this Count.

    34.    As defined by 18 U.S.C. § 1961(B), Defendants engaged in racketeering activity when they repeatedly violated 18 U.S.C. §§ 2314 (Transport of Stolen Property) and 2315 (Receipt of Stolen Property) to deposit in excess of Five Thousand Dollars ($5,000.00) of what they knew to be wrongfully taken funds into their financial accounts which funds then crossed state lines.

    35.    The defendants knew that on or after October 18, 2001, Doctor Robert Crants, Jr., and Doctor Robert Crants, III, had stolen over Five Thousand Dollars ($5,000.00) from the plaintiffs and HSC through a series of criminal acts, including mail, wire, and/or bank fraud and then transferred the money by wire into their respective financial accounts.

    36.    The defendants knew that on or after October 18, 2001, George W. Crawford, III, Esq., Linda Cooper, Esq., and Roy Oaks, CPA, as professionals and

fiduciaries working for HSC, assisted the racketeering activity by breaching their fiduciary duty to the plaintiffs and HSC and by following the instructions of Crants, Jr., and Crants, III, to defraud the plaintiffs and HSC of their property and business interests, including money of value of Five Thousand Dollars ($5,000.00) or more.

37. The defendants knew that on or after October 18, 2001, by way of the Crantses' control of HSC, with the assistance of Crawford, Oaks, Cooper, DEVLIN, JOHNSON, and LOGAN, Crants, Jr., and Crants, III, transferred money of value of Five Thousand Dollars ($5,000.00) or more by check, wire, or electronic transfer from HSC to the defendant-enterprises without full disclosure or written approval of HSC's Board of Directors, including Bruce K. Siddle, in repeated violation of 18 U.S.C. §§ 2314 and 2315.

38. The defendants knew or should have known that these transactions, not only violated the laws of the United States of America and of this state; but also, violated numerous criminal and civil statutes of the state of Tennessee. See, T.C.A. §§ 39-14-103 (Theft of Property); 39-14-104 (Theft of Services); 39-14-112 (Extortion); 39-14-114 (Forgery); 39-14-116 (Hindering Secured Creditors); 39-14-120 (Issuing False Financial Statements); 39-14-127 (Deceptive Business Practices); 48-2-121 (Fraudulent Acts or Devices); 48-16-101 (Authorized Shares); 48-16-102 (Terms Determined by Board of Directors); 48-16-103 (Issued and Outstanding Shares); 48-16-401 (Distribution to Shareholders); 48-18-101 (Board of Directors); 48-18-301 (General Standards of Conduct); 48-18-302 (Director and Officer Conflict of Interest); 48-18-303 (Loans to Directors and Officers); 48-18-304 (Liability for Unlawful Distributions); 48-18-403 (Standard of Conduct for Officers); and 48-26-1-1 (Corporate Records).

39.    The defendants knew that after Crants, Jr., and Crants, III, had wrongfully obtained money through their offices, employment, and positions of trust with HSC and PPCT, Crants, Jr., and Crants, III, as officers, employees, and agents of the defendant-enterprises, received the wrongfully taken money on behalf of the defendant-enterprises; and, caused the wrongfully taken funds to be transmitted by check, wire, or electronically across state lines, knowing that the money had been stolen from the plaintiffs and HSC.

40.    These wrongfully taken funds traveled through interstate commerce and crossed state lines in the federal reserve system when the defendants deposited the funds into their personal and business accounts after the defendant-enterprises knew that the funds had been wrongfully taken from HSC and the plaintiffs.

41.    In this manner, the defendant-enterprises received, possessed, or disposed of money of value of $5,000 or more or caused money, including, but not limited to the amounts described below, to be received, possessed or disposed of by check, wire, or electronically, across state lines, after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken.  See for example:

42.    ConnectGov, Inc.

|     | Date     | Name            | Check #  | Amount        |
|-----|----------|-----------------|----------|---------------|
| (a) | 02/20/02 | ConnectGov, Inc. | 1008     | $35,000.00    |
| (b) | 02/20/02 | ConnectGov, Inc. | 1009     | $20,000.00    |
| (c) | 02/27/02 | ConnectGov, Inc. | Transfer | $102,597.25   |
| (d) | 07/17/02 | ConnectGov, Inc. | Transfer | $5,000.00     |
| (e) | 07/30/02 | ConnectGov, Inc. | Transfer | $32,500.00    |

Case 3:09-cv-01137   Document 2   Filed 05/19/09   Page 12 of 32 PageID #: 15

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (f) | 08/23/02 | ConnectGov, Inc. | Transfer | $8,511.69 |
| (g | 08/26/02 | ConnectGov, Inc. | Transfer | $6,205.00 |
| (h | 09/23/02 | ConnectGov, Inc. | Transfer | $6,200.00 |
| (i) | 09/30/02 | ConnectGov, Inc. | Transfer | $7,000.00 |
| (j) | 10/31/02 | ConnectGov, Inc. | 2180 | $35,395.39 |
| (k | 10/31/02 | ConnectGov, Inc. | 2179 | $10,669.96 |
| (l) | 11/05/02 | ConnectGov, Inc. | Transfer | $21,890.32 |
| (m) | 12/02/02 | ConnectGov, Inc. | Transfer | $500,000.00 |
| (n) | 12/16/02 | ConnectGov, Inc. | Transfer | $16,000.00 |
| (o) | 01/07/03 | ConnectGov, Inc. | Transfer | $225,000.00 |
| (p) | 02/04/03 | ConnectGov, Inc. | Transfer | $10,000.00 |
| (q) | 02/21/03 | ConnectGov, Inc. | Transfer | $10,000.00 |
| (r) | 08/12/05 | ConnectGov, Inc. | Transfer | ($39,415.75) |
| | | | | $1,012,553.86 |

43.     ConnectGov, Inc. – HSC Payments to Titan Related Expenses

| | Date | Payment for | | Amount |
|---|---|---|---|---|
| (a) | 05/01/02 | 2002 Season | | $12,500.00 |
| (b) | 01/03/03 | Refreshments | | $5,820.00 |
| (c) | 06/23/03 | 2003 Season | | $22,170.00 |
| (d) | 02/01/04 | Promotions | | $59,000.00 |
| (e) | 02/20/04 | Promotions | | $13,000.00 |
| (f) | 08/30/04 | Promotions | | $59,000.00 |
| (g) | 12/15/04 | Refreshments | | $8,068.00 |
| (h) | 02/21/05 | 2005 Season | | $13,500.00 |
| (i) | 11/08/05 | Promotions | | $20,000.00 |
| | | | | $213,058.00 |

44.     Jack Dalton

Case 3:09-cv-01137   Document 2   Filed 05/19/09   Page 13 of 32 PageID #: 16

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 10/18/02 | Jack Dalton | 2007 | $80,000.00 |
| (b) | 02/03/04 | Jack Dalton | 3874 | $9,618.00 |
| (c) | 02/26/04 | Jack Dalton | 3919 | $9,168.00 |
| (d) | 04/01/04 | Jack Dalton | 4049 | $9,168.00 |
| (e) | 05/07/04 | Jack Dalton | 4144 | $9,168.00 |
| (f) | 06/02/04 | Jack Dalton | 4210 | $9,168.00 |
| (g) | 07/06/04 | Jack Dalton | 4275 | $9,168.00 |
| (h) | 08/03/04 | Jack Dalton | 4348 | $9,168.00 |
| (i) | 08/27/04 | Jack Dalton | 4404 | $10,668.00 |
| (j) | 09/30/04 | Jack Dalton | 4487 | $10,668.00 |
| (k) | 10/29/04 | Jack Dalton | 4575 | $9,168.00 |
| (l) | 11/09/04 | Jack Dalton | 4610 | $46,350.00 |
| (m) | 11/30/04 | Jack Dalton | 4630 | $9,168.00 |
| (n) | 01/04/05 | Jack Dalton | 4701 | $9,168.00 |
| (o) | 01/25/05 | Jack Dalton | 4750 | $50,675.00 |
| (p) | 05/19/05 | Jack Dalton | 5010 | $46,425.00 |
| (q) | 06/16/05 | Jack Dalton | 5060 | $51,875.00 |
| | | | | $388,791.00 |

45.    DC Investment Partners, LLC

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 05/01/02 | DC Investment Partners, LLC | 1069 | $12,500.00 |
| (b) | 06/26/02 | DC Investment Partners, LLC | Wire | $225,000.00 |
| (c) | 09/09/02 | DC Investment Partners, LLC | 1784 | $225,000.00 |
| (d) | 01/03/03 | DC Investment Partners, LLC | 2458 | $5,820.00 |
| | | | | $486,320.00 |

46.    Four Corners Capital

Case 3:09-cv-01137   Document 2   Filed 05/19/09   Page 14 of 32 PageID #: 17

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 06/07/02 | Four Corners Capital | 1357 | $6,750.00 |
| (b) | 07/15/02 | Four Corners Capital | 1511 | $6,750.00 |
| (c) | 08/14/02 | Four Corners Capital | 1631 | $6,750.00 |
| (d) | 09/03/02 | Four Corners Capital | 1772 | $6,750.00 |
| (e) | 10/01/02 | Four Corners Capital | 1925 | $6,750.00 |
| (f) | 11/04/02 | Four Corners Capital | 2105 | $6,750.00 |
| (g) | 12/06/02 | Four Corners Capital | 2285 | $6,750.00 |
| (h) | 01/03/03 | Four Corners Capital | 2462 | $6,750.00 |
| (i) | 02/07/03 | Four Corners Capital | 2659 | $6,750.00 |
| (j) | 03/07/03 | Four Corners Capital | 2862 | $6,750.00 |
| (k) | 05/09/03 | Four Corners Capital | 3146 | $6,750.00 |
| | | | | $74,250.00 |

47.    Joseph F. Johnson

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 07/08/02 | Joe Johnson | 1485 | $12,500.00 |
| (b) | 09/05/02 | Johnson & Associates | 1781 | $20,000.00 |
| (c) | 09/16/02 | Johnson & Associates | 1828 | $10,000.00 |
| (d) | 11/20/02 | Johnson & Associates | 2182 | $15,000.00 |
| (e) | 02/17/03 | Joe Johnson | 2724 | $7,000.00 |
| | | | | $64,500.00 |

48.    Latimore Black Morgan & Cain, P.C.

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 05/09/05 | Latimore Black Morgan & Cain, P.C. | 4960 | $12,000.00 |
| | | | | $12,000.00 |

Page 15 of 32

49.    Lynview Capital

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 06/07/02 | Lynview Capital | 3158 | $10,000.00 |
| (b) | 07/15/02 | Lynview Capital | 1512 | $10,000.00 |
| (c) | 08/14/02 | Lynview Capital | 1632 | $10,000.00 |
| (d) | 10/01/02 | Lynview Capital | 1926 | $10,000.00 |
| (e) | 03/07/03 | Lynview Capital | 2881 | $10,000.00 |
| (f) | 05/09/03 | Lynview Capital | 3151 | $10,000.00 |
| | | | | $60,000.00 |

50.    Lynview Partners, LLC

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 09/03/02 | Lynview Partners, LLC | 1773 | $10,000.00 |
| (b) | 01/04/02 | Lynview Partners, LLC | 2107 | $10,000.00 |
| (c) | 02/06/02 | Lynview Partners, LLC | 2286 | $10,000.00 |
| (d) | 02/06/02 | Lynview Partners, LLC | 2288 | $550,000.00 |
| (e) | 01/03/03 | Lynview Partners, LLC | 2466 | $10,000.00 |
| (f) | 02/07/03 | Lynview Partners, LLC | 2664 | $10,000.00 |
| | | | | $600,000.00 |

51.    Pharos Capital Partners, L.P.

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 06/03/02 | Pharos Capital Partners, L.P. | 1331 | $75,000.00 |
| (b) | 08/22/02 | Pharos Capital Partners, L.P. | 1691 | $75,000.00 |
| (c) | 09/03/02 | Pharos Capital Partners, L.P. | 1774 | $75,000.00 |
| (d) | 10/01/02 | Pharos Capital Partners, L.P. | 1927 | $75,000.00 |
| (e) | 11/04/02 | Pharos Capital Partners, L.P. | 2108 | $75,000.00 |
| (f) | 11/26/02 | Pharos Capital Partners, L.P. | 2221 | $5,000,000.00 |
| (g) | 11/26/02 | Pharos Capital Partners, L.P. | 2219 | $65,000.00 |

Case 3:09-cv-01137   Document 2   Filed 05/19/09   Page 16 of 32 PageID #: 19

| Date | Name | Check # | Amount |
|------|------|---------|--------|
| | | | $5,440,000.00 |

52.    Pharos Homeland

| | Date | Name | Check # | Amount |
|-----|------|------|---------|--------|
| (a) | 06/10/02 | Pharos Homeland | 1361 | $155,250.00 |
| (b) | 08/23/02 | Pharos Homeland | 1697 | $155,250.00 |
| (c) | 09/03/02 | Pharos Homeland | 1775 | $155,250.00 |
| (d) | 10/01/02 | Pharos Homeland | 1928 | $155,250.00 |
| (e) | 10/29/02 | Pharos Homeland | 2059 | $155,250.00 |
| (f) | 12/20/02 | Pharos Homeland | 2417 | $67,500.00 |
| (g) | 12/31/02 | Pharos Homeland | 2454 | $67,500.00 |
| (h) | 01/15/03 | Pharos Homeland | 2540 | $378,000.00 |
| | | | | $1,289,250.00 |

53.    Pharos Homeland Financial

| | Date | Name | Check # | Amount |
|-----|------|------|---------|--------|
| (a) | 06/10/02 | Pharos Homeland Financial | 1362 | $1,999,733.00 |
| (b) | 08/14/02 | Pharos Homeland Financial | 1633 | $1,999,773.00 |
| (c) | 09/03/02 | Pharos Homeland Financial | 1776 | $1,999,733.00 |
| (d) | 10/01/02 | Pharos Homeland Financial | 1929 | $1,999,733.00 |
| (e) | 10/21/02 | Pharos Homeland Financial | 2019 | $888,882.94 |
| (f) | 10/29/02 | Pharos Homeland Financial | 2060 | $1,999,733.00 |
| (g) | 12/09/02 | Pharos Homeland Financial | 2304 | $308,273.24 |
| (h) | 12/20/02 | Pharos Homeland Financial | 2418 | $112,105.79 |
| (i) | 01/15/03 | Pharos Homeland Financial | 2541 | $1,146,895.30 |
| | | | | $12,454,862.27 |

54.    Pharos Homeland Financial, LLC

Case 3:09-cv-01137   Document 2   Filed 05/19/09   Page 17 of 32 PageID #: 20

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 07/16/02 | Pharos Homeland Financial, LLC | 1514 | $1,999,733.00 |
| (b) | 02/14/03 | Pharos Homeland Financial, LLC | 2719 | $1,146,895.30 |
| (c) | 06/23/03 | Pharos Homeland Financial, LLC | 3345 | $22,170.00 |
| | | | | $3,168,798.30 |

55.    Pharos Homeland, LLC

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 07/16/02 | Pharos Homeland, LLC | 1515 | $55,250.00 |
| (b) | 02/14/03 | Pharos Homeland, LLC | 2720 | $67,500.00 |
| (c) | 03/21/03 | Pharos Homeland, LLC | 2963 | $67,500.00 |
| (d) | 04/25/03 | Pharos Homeland, LLC | 3104 | $67,500.00 |
| (e) | 05/30/03 | Pharos Homeland, LLC | 3234 | $44,437.50 |
| (f) | 09/05/03 | Pharos Homeland, LLC | 3521 | $67,500.00 |
| (g) | 10/24/03 | Pharos Homeland, LLC | 3646 | $67,500.00 |
| (h) | 12/24/03 | Pharos Homeland, LLC | 3778 | $83,113.36 |
| (i) | 01/15/04 | Pharos Homeland, LLC | 3787 | $48,750.00 |
| (j) | 02/06/04 | Pharos Homeland, LLC | 3984 | $14,356.73 |
| (k) | 02/20/04 | Pharos Homeland, LLC | 3917 | $52,875.00 |
| (l) | 03/05/04 | Pharos Homeland, LLC | 3959 | $59,625.00 |
| (m) | 03/19/04 | Pharos Homeland, LLC | 4028 | $68,625.00 |
| (n) | 04/16/04 | Pharos Homeland, LLC | 4095 | $91,975.73 |
| (o) | 04/30/04 | Pharos Homeland, LLC | 4134 | $5,532.00 |
| (p) | 05/14/04 | Pharos Homeland, LLC | 4180 | $66,225.00 |
| (q) | 09/07/04 | Pharos Homeland, LLC | 4440 | $7,807.22 |
| (r) | 09/30/04 | Pharos Homeland, LLC | 4494 | $5,625.00 |
| (s) | 10/25/04 | Pharos Homeland, LLC | 4566 | $6,000.00 |
| (t) | 11/04/04 | Pharos Homeland, LLC | 4605 | $6,190.00 |
| (u) | 02/04/05 | Pharos Homeland, LLC | 4778 | $46,875.00 |
| (v) | 03/18/05 | Pharos Homeland, LLC | 4879 | $6,000.00 |
| (w) | 05/10/05 | Pharos Homeland, LLC | 4999 | $14,068.00 |

Case 3:09-cv-01137   Document 2   Filed 05/19/09   Page 18 of 32 PageID #: 21

| Date | Name | Check # | Amount |
|---|---|---|---|
| | | | $1,020,830.54 |

56. Satellite Tracking of People, LLC (STOP), state of Tennessee

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (a) | 01/14/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $32,546.91 |
| (b) | 01/26/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $28,626.69 |
| (c) | 02/09/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $28,143.51 |
| (d) | 02/23/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $30,832.43 |
| (e) | 03/11/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $34,540.96 |
| (f) | 03/30/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $32,862.59 |
| (g) | 04/15/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $36,205.68 |
| (h) | 04/26/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $36,468.14 |
| (i) | 05/11/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $37,043.26 |
| (j) | 05/26/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $39,016.33 |
| (k) | 06/10/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $37,631.51 |
| (l) | 06/29/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $48,321.96 |
| (m) | 07/15/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $42,920.39 |
| (n) | 07/25/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $43,631.21 |
| (o) | 08/10/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $46,576.07 |

Case 3:09-cv-01137   Document 2   Filed 05/19/09   Page 19 of 32 PageID #: 22

| | Date | Name | Check # | Amount |
|---|---|---|---|---|
| (p) | 08/25/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $44,361.92 |
| (q) | 09/13/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $49,846.84 |
| (r) | 09/30/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $58,707.01 |
| (s) | 10/11/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $51,652.82 |
| (t) | 10/26/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $41,780.86 |
| (u) | 11/14/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $59,322.66 |
| (v) | 11/29/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $47,596.12 |
| (w) | 12/12/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $64,798.81 |
| (x) | 12/23/05 | Satellite Tracking of People, LLC (STOP), state of Tennessee | | $67,773.51 |
| | | | | $1,041,208.19 |

57.     On information and belief GSRM also received approximately $100,000 of HSC funds by wire in December of 2004 or January of 2005 for STOP.

58.     On information and belief GSRM also received approximately $250,000 of HSC funds by wire in December of 2004 or January of 2005 for STOP.

59.     In each of the above transactions, the defendant-enterprises: (a) knew that the money they received – a total of more than Twenty-Seven Million Three Hundred Eight Thousand Four Hundred Twenty Dollars ($27,308,420.00) - had been stolen, unlawfully converted, or taken from Homeland Security Corporation and/or the plaintiffs; and, (b) caused money of the value of more than $5,000 to cross state lines in interstate commerce.

60.     In each of the above transactions, the defendant-enterprises used the money derived from the defendants' racketeering activity, more than Twenty-Seven Million Three Hundred Eight Thousand Four Hundred Twenty Dollars ($27,308,420.00), in the operation of their enterprises to injure plaintiffs: (a) by usurping the plaintiffs' legitimate business opportunities, expectations, and contracts; (b) by oppressive, unfair, and deceptive business practices in violation of 805 ILCS 5/12.56(a)(3); 815 ILCS 505/2; and, 815 ILCS 510/2; (c) from the fraudulent issuance of stock in violation of 720 ILCS 5/17-17 & 18; (d) from fraudulent schemes and artifices in violation of 720 ILSC 5/17-24; and, (e) from other deceptive practices in violation of 720 ILSC 5/17-1.

61.     The racketeering conspiracy to receive millions of dollars wrongfully taken from the Plaintiffs, HSC, and others, in violation of 18 U.S.C. §§ 2314 and 2315 continues to present.  The illegal transfers threaten to continue on indefinitely into the future with the likelihood of many other victims similar to the plaintiffs and HSC.

62.     Defendants acted willfully, recklessly, oppressively, and with complete indifference to and conscious disregard for Plaintiffs' rights, and punitive damages should be awarded against each defendant to deter them and others similarly situated from similar conduct.

63.     As a direct and proximate result of Defendants' racketeering activity, including the specific predicate and overt acts of each individual defendant and the combined racketeering activity and misconduct of Defendants, as specifically described herein, Plaintiffs suffered economic loss, including loss of past and future profits, and personal injury.

## Request for Relief

WHEREFORE, Plaintiffs request that the Court:

A.      Pursuant to 18 U.S.C. § 1964, award Plaintiffs treble the amount of damages sustained to their business and property interests against the defendants, jointly and severally, in an amount in excess of Eighty One Million Nine Hundred Twenty Five Thousand Two Hundred Sixty Dollars ($81,925,260);

B.      Award Plaintiffs compensatory damages in an amount to be proven at trial;

C.      Award Plaintiffs punitive damages in an amount to be proved at trial;

D.      Award Plaintiffs costs, pre-judgment interest, post judgment interest, and reasonable attorney fees; and,

E.      Award Plaintiffs all other just and equitable relief, including the imposition of a constructive trust with tracing, as this Court deems proper.

## Count II: 18 U.S.C. § 1962(b) RICO

Come now Plaintiffs, Bruce K. Siddle, Sandra K. Siddle, individually, and as Trustees of The Bruce K. Siddle and Sandra K. Siddle Trusts, dated July 16, 2003, and PPCT Management Systems, Inc., for their second cause of action, allege that Defendants JOSEPH F. JOHNSON, Jr., and STEVEN W. LOGAN:

(i)      through a pattern of racketeering activity;

(ii)     acquired or maintained, directly or indirectly, some interest in or control of STOP as described herein; and,

(iii)    injured the plaintiffs by their acquisition or their control of an interest is STOP.

64.     Plaintiffs repeat and allege the allegations of paragraphs 1 through 63

of above as paragraphs 1 through 64 of this Count.

65. Defendants, LOGAN and JOHNSON, through a pattern of racketeering activity, including the racketeering activity mentioned above, acquired or maintained interests in or control of STOP, including:

(a) Their interests in the organization, creation, and operation of STOP which Doctor R. Crants, Jr., incorporated on August 29, 2003 to usurp business opportunities, customers, resources, and assets from HSC and the plaintiffs;

(b) Their interests in their 40% (20% each) ownership of STOP;

(c) Their interests in their positions, JOHNSON, President, and LOGAN, Chief Executive Officer, of STOP;

(d) Their interests in the restructuring of STOP to obtain a $4,165,000 capital investment in STOP for the benefit of STOP rather than HSC and the plaintiffs;

(e) Their interests in STOP's acquisition of VerQuis, LLC usurped from HSC and the plaintiffs for the benefit of STOP;

(f) Their interests in STOP's acquisition of Acquire Veridian Information Solutions usurped from HSC and the plaintiffs for the benefit of STOP;

(g) Their interests in STOP's acquisition of VeriTracks Services usurped from HSC and the plaintiffs for the benefit of STOP;

(h) Their interests in STOP's acquisition of Associate Service CorpVeridian usurped from HSC and the plaintiffs for the benefit of STOP;

(i) Their interests in STOP's acquisition of On Guard Plus Limited usurped from HSC and the plaintiffs for the benefit of STOP;

(j) Their interests in STOP's acquisition of Strategic Technologies Inc

Page 23 of 32

usurped from HSC and the plaintiffs for the benefit of STOP;

(k)    Their interests in STOP's acquisition of satellite tracking devices from General Dynamics usurped from HSC and the plaintiffs for the benefit of STOP;

(l)    Their interests in STOP's contracts with General Dynamics- Advanced Information Systems, Inc usurped from HSC and the plaintiffs for the benefit of STOP;

(m)    Their interests in STOP's Correlation Partners Agreements usurped from HSC and the plaintiffs for the benefit of STOP;

(n)    Their interests in STOP's Whitney & Co, LLC funding usurped from HSC and the plaintiffs for the benefit of STOP;

(o)    Their interests in STOP's JHW Greentree Capital, L.P.'s $5,000,000 funding usurped from HSC and the plaintiffs for the benefit of STOP;

(p)    Their interests in STOP's non-complete and confidentiality agreements usurped from HSC and the plaintiffs for the benefit of STOP;

(q)    Their interests in the STOP Class B Grant Agreements for LOGAN, JOHNSON, Ziller, and Morgan usurped from HSC and the plaintiffs for the benefit of STOP;

(r)    Their interests in any STOP Agreement Regarding Intellectual Property and Non-Disclosure of Information with HSC on and after December 16, 2004 usurped from HSC and the plaintiffs for the benefit of STOP;

(s)    Their interests in STOP's patents, copyrights, licenses, permits, and trademarks, including but not limited to STOP's intellectual property rights pertaining to John Taylor and Correlation Partners, and U.S. Patent 6,703,936 B2 usurped from HSC for the benefit of STOP;

(t)     Their interests in their STOP Consulting Agreements usurped from HSC and the plaintiffs for the benefit of STOP;

(u)     Their interests in STOP's over One Hundred Ninety One Thousand Six Hundred Twenty Five Dollars ($191,625.00) payment per year per customer for STOP's equipment and services on and after April 20, 2004 usurped from HSC and the plaintiffs for the benefit of STOP;

(v)     Their interests in STOP's Georgia State Board of Pardons and Paroles for Electronic Monitoring Services Contract: RFP GTA 000200 usurped from HSC and the plaintiffs for the benefit of STOP;

(w)     Their interests in STOP's relationship with CONNECTGOV INC's, including subscription agreements usurped from HSC and the plaintiffs for the benefit of STOP;

(x)     Their interests in Satellite Tracking of People VQ, Crime Scene Correlation, BluTag, CellTracks, and TelTag usurped from HSC and the plaintiffs for the benefit of STOP;

(y)     Their interests in STOP's Mutual Non-Disclosure Agreement with Micro International, Inc usurped from HSC and the plaintiffs for the benefit of STOP;

(z)     Their interests in STOP's illegitimate agreement to pay HSC $5,000 per month for payroll services;

(aa)     Their interests in STOP's bond, insurance, wages, fees, and salaries paid by HSC for the benefit of STOP and to the detriment of HSC and the plaintiffs;

(bb)     Their interests in the revenues created for STOP when Doctor R. Crants, Jr., Director and Chief Executive Officers of HSC breached his fiduciary duty to HSC and the plaintiffs for the benefit of STOP and to the detriment of HSC and

the plaintiffs;

(cc)   Their interest in the revenues created for STOP when Linda Cooper, General Counsel and Vice President of HSC, breached her fiduciary duty to HSC and the plaintiffs for the benefit of STOP and to the detriment of HSC and the plaintiffs; and,

(dd)   Their interests in the revenues created for STOP when George Crawford, III, Corporate Counsel for HSC, breached his fiduciary duty to HSC and the plaintiffs for the benefit of STOP and to the detriment of HSC and the plaintiffs.

66.    Defendants acted willfully, recklessly, oppressively, and with complete indifference to and conscious disregard for Plaintiffs' rights, and punitive damages should be awarded against each defendant to deter them and others similarly situated from similar conduct.

67.    As a direct and proximate result of Defendants' racketeering activity, including the specific predicate and overt acts of each individual defendant and the combined racketeering activity and misconduct of Defendants, as specifically described herein, Plaintiffs suffered economic loss, including loss of past and future profits, and personal injury.

## **Request for Relief**

WHEREFORE, Plaintiffs request that the Court:

A.    Pursuant to 18 U.S.C. § 1964, award Plaintiffs treble the amount of damages sustained to their business and property interests against the defendants, jointly and severally, in an amount in excess of Eighty One Million Nine Hundred Twenty Five Thousand Two Hundred Sixty Dollars ($81,925,260);

B.    Award Plaintiffs compensatory damages in an amount to be proven at

trial;

C.       Award Plaintiffs punitive damages in an amount to be proved at trial;

D.       Award Plaintiffs costs, pre-judgment interest, post judgment interest, and reasonable attorney fees; and,

E.       Award Plaintiffs all other just and equitable relief, including the imposition of a constructive trust with tracing, as this Court deems proper.

## Count III: 18 U.S.C. § 1962(c) RICO

Come now Plaintiffs, Bruce K. Siddle, Sandra K. Siddle, individually, and as Trustees of The Bruce K. Siddle and Sandra K. Siddle Trusts, dated July 16, 2003, and PPCT Management Systems, Inc., for their third cause of action, allege that Defendants, JOSEPH JOHNSON, JACK DALTON, MICHAEL W. DEVLIN, and STEVE LOGAN: (i) conducted or participated, directly or indirectly, in the affairs of their respective enterprises, JOHNSON in CONNECTGOV, STOP, and HSC, DALTON in CONNECTGOV and HSC, DEVLIN in FOUR CORNERS, LYNVIEW, CONNECTGOV, DC INVESTMENT, and PHAROS, and LOGAN in STOP; (ii) while associated with their respective enterprises; (iii) through a pattern of racketeering activity as described herein.

68.      Plaintiffs repeat and allege the allegations of paragraphs 1 through 67 of above as paragraphs 1 through 68 of this Count.

69.      Defendants acted willfully, recklessly, oppressively, and with complete indifference to and conscious disregard for Plaintiffs' rights, and punitive damages should be awarded against each defendant to deter them and others similarly situated from similar conduct.

70.      As a direct and proximate result of Defendants' racketeering activity,

including the specific predicate and overt acts of each individual defendant and the combined racketeering activity and misconduct of Defendants, as specifically described herein, Plaintiffs suffered economic loss, including loss of past and future profits, and personal injury.

## Request for Relief

WHEREFORE, Plaintiffs request that the Court:

A.      Pursuant to 18 U.S.C. § 1964, award Plaintiffs treble the amount of damages sustained to their business and property interests against the defendants, jointly and severally, in an amount in excess of Eighty One Million Nine Hundred Twenty Five Thousand Two Hundred Sixty Dollars ($81,925,260);

B.      Award Plaintiffs compensatory damages in an amount to be proven at trial;

C.      Award Plaintiffs punitive damages in an amount to be proved at trial;

D.      Award Plaintiffs costs, pre-judgment interest, post judgment interest, and reasonable attorney fees; and,

E.      Award Plaintiffs all other just and equitable relief, including the imposition of a constructive trust with tracing, as this Court deems proper.

## COUNT IV: 18 U.S.C. § 1962(d) RICO

Come now Plaintiffs, Bruce K. Siddle, Sandra K. Siddle, individually, and as Trustees of The Bruce K. Siddle and Sandra K. Siddle Trusts, dated July 16, 2003, and PPCT Management Systems, Inc., for their fourth cause of action, allege that Defendants JOSEPH JOHNSON, STEVE LOGAN, JACK DALTON, and MICHAEL DEVLIN: (i) agreed to conduct or participate in the affairs of their respective enterprises, JOHNSON in CONNECTGOV, STOP, and HSC, DALTON in CONNECTGOV

Page 28 of 32

and HSC, DEVLIN in FOUR CORNERS, LYNVIEW, CONNECTGOV, DC INVESTMENT, and PHAROS, and LOGAN in STOP through a pattern racketeering in violation of 1962(a), 1962(b), or 1962(c); and (ii) committed predicate acts that harmed Plaintiffs as described herein.

71.     Plaintiffs repeat and allege the allegations of paragraphs 1 through 70 of above as paragraphs 1 through 71 of this Count.

72.     JOHNSON, with others, directed the affairs of CONNECTGOV, STOP, and HSC.  He agreed to promote the illegal schemes, accepted the proceeds of the illegal schemes, and facilitated concealment of the illegal schemes described above.

73.     LOGAN, with others, directed the affairs of STOP.  He agreed to promote the illegal schemes, accepted the proceeds of the illegal schemes, and facilitated concealment of the illegal schemes described above.

74.     DALTON, with others, directed the affairs of CONNECTGOV and HSC. He agreed to promote the illegal schemes, accepted the proceeds of the illegal schemes, and facilitated concealment of the illegal schemes described above.

75.     DEVLIN, with others, directed the affairs of CONNECTGOV, FOUR CORNERS, LYNVIEW, DC INVESTMENT, and PHAROS.  He agreed to promote the illegal schemes, accepted the proceeds of the illegal schemes, and facilitated concealment of the illegal schemes described above.

76.     Defendants acted willfully, recklessly, oppressively, and with complete indifference to and conscious disregard for Plaintiffs' rights, and punitive damages should be awarded against each defendant to deter them and others similarly situated from similar conduct.

77.     As a direct and proximate result of Defendants' racketeering activity,

including the specific predicate and overt acts of each individual defendant and the combined racketeering activity and misconduct of Defendants, as specifically described herein, Plaintiffs suffered economic loss, including loss of past and future profits, and personal injury.

## Request for Relief

WHEREFORE, Plaintiffs request that the Court:

A.      Pursuant to 18 U.S.C. § 1964, award Plaintiffs treble the amount of damages sustained to their business and property interests against the defendants, jointly and severally, in an amount in excess of Eighty One Million Nine Hundred Twenty Five Thousand Two Hundred Sixty Dollars ($81,925,260);

B.      Award Plaintiffs compensatory damages in an amount to be proven at trial;

C.      Award Plaintiffs punitive damages in an amount to be proved at trial;

D.      Award Plaintiffs costs, pre-judgment interest, post judgment interest, and reasonable attorney fees; and,

E.      Award Plaintiffs all other just and equitable relief, including the imposition of a constructive trust with tracing, as this Court deems proper.

## COUNT V: Illegal Conspiracy

78.      Come now Plaintiffs, Bruce K. Siddle, Sandra K. Siddle, individually, and as Trustees of The Bruce K. Siddle and Sandra K. Siddle Trusts, dated July 16, 2003, and PPCT Management Systems, Inc., for their fifth cause of action, allege that each of the defendants combined with at least one other person, as described above, to commit or to cover up the unlawful acts mentioned herein.

79.      Plaintiffs repeat and allege the allegations of paragraphs 1 through 78

of above as paragraphs 1 through 79 of this Count.

80.    Defendants acted willfully, recklessly, oppressively, and with complete indifference to and conscious disregard for Plaintiffs' rights, and punitive damages should be awarded against each defendant to deter them and others similarly situated from similar conduct.

81.    As a direct and proximate result of Defendants' racketeering activity, including the specific predicate and overt acts of each individual defendant and the combined racketeering activity and misconduct of Defendants, as specifically described herein, Plaintiffs suffered economic loss, including loss of past and future profits, and personal injury.

## Request for Relief

WHEREFORE, Plaintiffs request that the Court:

A.    Award Plaintiffs compensatory damages in an amount to be proven at trial;

B.    Award Plaintiffs punitive damages in an amount to be proved at trial;

C.    Award Plaintiffs costs, pre-judgment interest, post judgment interest, and reasonable attorney fees; and,

D.    Award Plaintiffs all other just and equitable relief, including the imposition of a constructive trust with tracing, as this Court deems proper.

## Jury Demand

Plaintiffs, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, hereby demand trial by jury.

s\Bruce A. Carr_____
Bruce A. Carr, IL # 6291148
The Rex Carr Law Firm, LLC

Page 31 of 32

412 Missouri Ave.
East St. Louis, Illinois 62201
618/274-0434 (telephone)
618/274-8369 (facsimile)
bcarr@rexcarr.com
Attorneys for Plaintiffs